## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 22 2020, 10:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Charlton Jones,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff,*

June 22, 2020

Court of Appeals Case No.
19A-CR-2291

Appeal from the Marion Superior Court

The Honorable Charnette D. Garner, Judge

Trial Court Cause No.
49G09-1805-F6-17571

**Robb, Judge.**

# Case Summary and Issues

[1] Following a bench trial, Charlton Jones was convicted of possession of marijuana and operating a vehicle while intoxicated endangering a person, both Class A misdemeanors, and was sentenced to concurrent 365 day sentences on each charge, with credit for four days served and 361 days suspended. Jones appeals and raises two issues, which we restate as: (1) whether the State presented sufficient evidence to support his conviction of possession of marijuana, and (2) whether the State presented sufficient evidence to support his conviction of operating a vehicle while intoxicated endangering a person. Concluding the State produced sufficient evidence to support both convictions, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the judgment are as follows: Late on the evening of May 18, 2018, Captain Erwin Faulk of the Indiana State Police ("ISP") was traveling on Interstate 70 in Indianapolis, Indiana, when he observed a truck traveling sixty-eight miles per hour in a fifty mile per hour zone. The truck "was swerving back and forth within its lane" and Captain Faulk "observed it come out of its lane a couple times[.]" Transcript, Volume II at 76. On at least one occasion and possibly two, the driver of the truck failed to signal when changing lanes. At the time, however, Officer Faulk had a detainee in his vehicle so he could not initiate a traffic stop because it was "against ISP policy to stop another vehicle when we have a prisoner in the vehicle." *Id*. at 77.

Therefore, he requested assistance and continued to follow the truck until another unit initiated a traffic stop.

[3] ISP Trooper Matthew Helmbrecht responded to the call for assistance, located the truck, and initiated a traffic stop. Trooper Helmbrecht discovered that Jones was the driver of the truck and that he had a friend in the car with him. Jones told Trooper Helmbrecht that he knew he had been swerving, claiming that he was on his cellphone. But while speaking with Jones, Trooper Helmbrecht identified signs of intoxication such as the odor of alcohol, watery and blood shot eyes, unsteady balance, and slurred speech. Trooper Helmbrecht also noticed an odor emanating from inside the vehicle that based on his seven years of training and experience, he believed to be marijuana and observed what appeared to be "lose [sic] pieces of [m]arijuana stuck to [Jones'] pants[.]" *Id.* at 90. When asked if he had been drinking, Jones responded that he had.

[4] Trooper Helmbrecht asked Jones to exit his vehicle and began to administer a field sobriety test. Jones failed the test and refused to undergo any further field sobriety tests or a portable breath test. Trooper Helmbrecht asked Jones about the marijuana on his pants and Jones said that "he had just rolled up and smoked before being stopped" and described himself as being a "weed head." *Id.* at 100. When asked if there was any more marijuana in the vehicle, Jones responded that he did not know but admitted that the vehicle and "everything in the vehicle [was] his[.]" *Id.* at 100-01. After searching the vehicle, Officer Helmbrecht located two plastic bags containing a substance he identified as marijuana. *Id.* at 102. Jones was arrested and transported to Eskenazi Health

Hospital for a chemical test, which showed an alcohol concentration equivalent ("ACE") of .02.

[5] The State charged Jones with possession of marijuana, a Class B misdemeanor, and operating a vehicle while intoxicated endangering a person, a Class A misdemeanor. The State also filed an enhancement to the possession of marijuana charge, alleging Jones had a previous conviction for possession of marijuana which would enhance that charge to a Class A misdemeanor.

[6] At Jones' bench trial, the trial court found him guilty as charged.[1] Jones admitted to having a prior conviction for possession of marijuana and therefore, the trial court entered judgment of conviction for both possession of marijuana and operating a vehicle while intoxicated endangering a person as Class A misdemeanors. Jones received an aggregate sentence of 365 days, with 361 days suspended. Jones now appeals.

# Discussion and Decision

## I. Standard of Review

[7] Our standard of review in this area is well settled. When reviewing the sufficiency of evidence, we do not reweigh the evidence or assess witness

---

[1] Prior to trial, the State amended its charging information to add a charge of operating a vehicle with a schedule I or II controlled substance or its metabolite in the body as a Class C misdemeanor. After the State presented its case, Jones moved for an involuntary dismissal of all crimes charged pursuant to Indiana Trial Rule 41(B). However, the trial court only granted Jones' motion as to operating a vehicle with a schedule I or II controlled substance or its metabolite in the body. *See* Tr., Vol. II at 200.

credibility. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Instead, we consider only the probative evidence and reasonable inferences supporting the judgment. *Id*. We consider conflicting evidence in the light most favorable to the judgment and will affirm the conviction unless no reasonable factfinder could find that the elements of the crime were proven beyond a reasonable doubt. *Oster v. State*, 992 N.E.2d 871, 875 (Ind. Ct. App. 2013), *trans. denied*. The evidence is sufficient if an inference may be reasonably drawn from it to support the judgment. *Temperly v. State*, 933 N.E.2d 558, 567 (Ind. Ct App. 2010), *trans. denied*, *cert. denied*, 565 U.S. 976 (2011). "A conviction may be based upon circumstantial evidence alone." *Bockler v. State*, 908 N.E.2d 342, 346 (Ind. Ct. App. 2009) (citation omitted).

## II. Sufficiency of the Evidence

### A. Possession of Marijuana

Jones first contends that evidence that Trooper Helmbrecht "smelled" the odor of marijuana and found a plant material that "looked" like marijuana was insufficient to support his possession of marijuana conviction. Brief of Appellant at 11. Jones maintains that because the substance found in his vehicle was not admitted into evidence and the State failed to provide expert testimony to confirm the substance was marijuana, his conviction for possession of marijuana cannot stand. We disagree.

To convict Jones of possession of marijuana as a Class A misdemeanor, the State was required to prove beyond a reasonable doubt that Jones knowingly or

intentionally possessed marijuana and had a prior conviction for a drug offense. *See* Ind. Code § 35-48-4-11(a), (b)(1). For offenses involving controlled substances, the State is not required to introduce the contraband to obtain a conviction for possession. *Helton v. State*, 907 N.E.2d 1020, 1024 (Ind. 2009). "The identity and quantity of a controlled substance, and the defendant's possession of or dealing in narcotics, may all be established through witness testimony and circumstantial evidence." *Id*. "Although chemical analysis is one way, and perhaps the best way, to establish the identity of a compound," "[t]he opinion of someone sufficiently experienced with the drug may establish its identity[.]" *Vasquez v. State*, 741 N.E.2d 1214, 1216 (Ind. 2001).

[10]     Here, Trooper Helmbrecht testified at trial that he was trained to identify marijuana and had seven years of experience with ISP, during which he encountered marijuana on multiple occasions. He has "dealt with [m]arijuana, weighed it, packaged it, put it into evidence, [and] smelled it on numerous . . . occasions." Tr., Vol. II at 92. Trooper Helmbrecht testified that even without field testing the substance found on Jones, "it looked like [m]arijuana, smelled like [m]arijuana, [and] I do not know it to be anything else but [m]arijuana." *Id*. Therefore, viewing the evidence in the light most favorable to the judgment, a court could reasonably determine that the testimony of Trooper Helmbrecht was sufficient to establish the identity of the substance as marijuana because he was sufficiently experienced with marijuana. Moreover, Jones' own statements confirmed that he possessed marijuana. He explained the loose marijuana on his pants by telling Trooper Helmbrecht that before he was stopped, he had just

finished rolling up and smoking and even characterized himself as a "weed head." *Id.* at 100. After officers searched and found marijuana in Jones' vehicle, Jones confirmed that "if there was [m]arijuana in the vehicle it was his" and did not belong to his passenger. *Id.* at 103. This evidence is sufficient to establish that Jones possessed marijuana. *See, e.g.*, *Boggs v. State*, 928 N.E.2d 855, 867 (Ind. Ct. App. 2010) (holding that sufficient evidence existed when officers testified that, based on their training and experience, the green, leafy substance they found was consistent with marijuana and the defendant admitted that he had a small amount of marijuana), *trans. denied*.

[11]   Jones argues that the State failed to prove that the substance he possessed was actually marijuana and not "industrial hemp." At the time of Jones' arrest in 2018, Indiana Code section 35-48-1-19(a) defined "marijuana" as "any part of the plant genus Cannabis whether growing or not; the seeds thereof; the resin extracted from any part of the plant, including hashish and hash oil; any compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin." There were seven exceptions that did not fall within the definition of marijuana, one of which was "industrial hemp." Ind. Code § 35-48-1-19(b)(6) (2018). "Industrial hemp" was defined as:

> (1) [A]ll nonseed parts and varieties of the Cannabis sativa plant, whether growing or not, that contain a crop wide average tetrahydrocannabinol (THC) concentration that does not exceed the lesser of:
>
> (A) three-tenths of one percent (0.3%) on a dry weight basis; or

(B) the percent based on a dry weight basis determined by the federal Controlled Substances Act[.]

Ind. Code § 15-15-13-6 (2014).

[12]  The State did not admit a lab report into evidence that would indicate the percentage of THC present in the substance found on Jones and in his truck. Regardless, the possession of marijuana statute does not require the State to prove an exact percentage of THC content. To the extent that Jones suggests the State was required to prove that the substance was not "industrial hemp," that is incorrect. Contrary to Jones' assertion, it is not (and never has been) the State's burden to prove what the substance *was not*; that is Jones' obligation. In other words, the State was not required to establish that the substance Trooper Helmbrecht found on Jones *was not* industrial hemp. Instead, it was the State's burden to show that the substance was marijuana – a burden that we have already concluded the State has met through the testimony of Trooper Helmbrecht. Therefore, under the circumstances of this case, the State presented sufficient evidence to prove beyond a reasonable doubt that Jones possessed marijuana.

## B.  Operating a vehicle while intoxicated endangering a person

[13]  Jones next argues that the evidence was insufficient to support the "endangerment" element of operating a vehicle while intoxicated endangering a person. Jones contends that although he was speeding and swerving as Captain Faulk followed him, he "successfully navigated nine intersections with traffic

lights during that time, and stopped promptly when another officer pulled him over." Br. of Appellant at 20.

[14] To convict Jones of operating a vehicle while intoxicated as a Class A misdemeanor, the State was required to prove beyond a reasonable doubt that he 1) operated his vehicle 2) while intoxicated 3) in a manner that endangered a person. Ind. Code § 9-30-5-2(b). Based on the argument Jones presents, we need only decide if the evidence of endangerment is sufficient.

[15] The endangerment element can be established by evidence showing that the defendant's condition or manner of operating a vehicle *could have* endangered any person, including the public, the police, or the defendant. *Staley v. State*, 895 N.E.2d 1245, 1249 (Ind. Ct. App. 2008), *trans. denied*. It is *not* required that the State prove that a person other than the defendant was actually in the path of the defendant's vehicle or in the same area to obtain a conviction. *Id*. at 1251. Thus, it is sufficient to show endangerment if the defendant's conduct renders driving unsafe. *Id*.

[16] Here, although Jones did not injure anyone from his careless driving, the manner in which he was driving *could have* endangered himself or others. Captain Faulk testified that he observed Jones traveling sixty-eight miles per hour in a fifty mile per hour zone and driving in an erratic manner on the interstate. This evidence of Jones' excessive speed coupled with swerving in and out of his lane is sufficient to prove endangerment. *See, e.g., Staley*, 895 N.E.2d at 1251 (holding there was sufficient evidence that the defendant endangered

himself and others when he was driving ten miles over the speed limit with his lights off); *see also Boyd v. State*, 519 N.E.2d 182, 184 (Ind. Ct. App. 1988) (holding the defendant endangered himself or others when he was driving fifty-four miles per hour, at night, in a thirty mile per hour zone). Jones' argument to the contrary is merely a request for this court to reweigh the evidence, which we cannot do. *See Drane,* 867 N.E.2d at 146. Therefore, the State presented sufficient evidence to prove that Jones operated a vehicle while intoxicated endangering a person.

# Conclusion

The State presented sufficient evidence to support Jones' convictions for possession of marijuana and operating a vehicle while intoxicated endangering a person. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

May, J., and Vaidik, J., concur.